FILED
2015 Sep-30  PM 03:17
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## JASPER DIVISION

| | | |
|---|---|---|
| STEVE BLACK, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 6:14-cv-00611-TMP |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

### I.    Introduction

The plaintiff, Steve Black, Jr., appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for a period of disability and Disability Insurance Benefits ("DIB"). Mr. Black timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Mr. Black was thirty-eight years old at the alleged onset of disability, December 25, 2009. (Tr. at 26). He has a high school education. (Tr. at 53). His

past work experience includes employment as a dump truck driver.  (Tr. at 25).

Mr. Black claims that he became disabled on December 25, 2009, due to

complications from a car accident and motorcycle accident that affected his

shoulder, neck, left arm, knee, and wrist.  (Tr. at 170).

When evaluating the disability of individuals over the age of eighteen, the

regulations prescribe a five-step sequential evaluation process.  *See* 20 C.F.R.

§§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir.

2001).  The first step requires a determination of whether the claimant is "doing

substantial gainful activity."  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If

he is, the claimant is not disabled and the evaluation stops.  *Id.*  If he is not, the

Commissioner next considers the effect of all of the physical and mental

impairments combined.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  These

impairments must be severe and must meet the durational requirements before a

claimant will be found to be disabled.  *Id.*  The decision depends on the medical

evidence in the record.  *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971).  If

the claimant's impairments are not severe, the analysis stops.   20 C.F.R.

§§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  Otherwise, the analysis continues to step

three, which is a determination of whether the claimant's impairments meet or

equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P,

Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the claimant's impairments fall within this category, he will be found disabled without further consideration.  *Id.*  If they do not, a determination of the claimant's residual functional capacity will be made and the analysis proceeds to the fourth step.  20 C.F.R. §§ 404.1520(e), 416.920(e).  Residual functional capacity ("RFC") is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite his or her impairments.  20 C.F.R. § 404.945(a)(1).

The fourth step requires a determination of whether the claimant's impairments prevent him from returning to past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant can still do his past relevant work, the claimant is not disabled and the evaluation stops.  *Id.*  If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step.  *Id.*  Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience, in order to determine if he can do other work.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant can do other work, the claimant is not disabled.  *Id.*  The burden is on the Commissioner to demonstrate that other jobs exist which the claimant can perform; and, once that burden is met, the claimant must prove his inability to perform those jobs in order to be found disabled.  *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

Applying the sequential evaluation process, the ALJ found that Mr. Black meets the nondisability requirements for a period of disability and DIB and was insured through September 30, 2010.[1] (Tr. at 19). He further determined that Mr. Black did not engage in substantial gainful activity from the alleged onset of his disability through his date last insured. (Tr. at 21). According to the ALJ, the plaintiff's bipolar disorder, major depressive disorder, and generalized anxiety disorder are considered "severe" based on the requirements set forth in the regulations. (*Id.*) However, he found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) The ALJ acknowledged the plaintiff's claim of disability due to injuries from a motor vehicle accident, but notes that the record contains no evidence of any such incident prior to the date last insured or that the claimant sought medical treatment for any physical impairments prior to September 30, 2010. (*Id.*) Accordingly, the ALJ determined that the plaintiff had no determinable physical impairments. (*Id.*) The ALJ determined that the plaintiff's statements regarding the intensity and limiting effects of his symptoms related to his mental impairments were not entirely credible. (Tr. at 24). He found that, through the date last insured, Mr. Black had the RFC to perform "a range of work at all

---

[1]   The DLI, or "date last insured," is crucial to the assessment of the claimant's disability. Because his DLI was September 30, 2010, he must prove that he was disabled as of that date. Disabilities occurring after that date are not insured under the Social Security Act.

exertional levels" but with the following nonexertional limitations: perform only simple, routine, and repetitive tasks; make only occasional changes in the work-setting; and occasionally interact with coworkers and supervisors. (Tr. at 23).

According to the ALJ, Mr. Black was, during the relevant time, able to perform his past work as a dump truck driver. (Tr. at 25). He is a younger individual with a high school education, and is able to communicate in English, as those terms are defined by the regulations. (Tr. at 26). The ALJ determined that transferability of skills is not an issue in this case. (*Id.*) Additionally, the ALJ determined that, in addition to work as a dump truck driver, other jobs exist in significant numbers in the national economy that someone of the claimant's age, education, work experience, and RFC could perform, such as hand packer, laundry worker, and machine packager. (Tr. at 26-27). The ALJ concluded his findings by stating that the plaintiff "was not under a disability, as defined in the Social Security Act, at any time from December 25, 2009, the alleged onset date, through September 30, 2010, the date last insured (20 CFR 404.1520(f))." (Tr. at 27).

## II.    Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the

Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).   The court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).   The court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Federal Mar. Comm'n*, 383 U.S. 607, 620 (1966)).   Indeed, even if this court finds that the evidence preponderates against the Commissioner's decision, the court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987).   Moreover, failure to apply the correct legal

standards is grounds for reversal.  *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

The court must keep in mind that opinions such as whether a claimant is disabled, the nature and extent of a claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability."   20 C.F.R. §§ 404.1527(e), 416.927(d).   Whether the plaintiff meets the listing and is qualified for Social Security disability benefits is a question reserved for the ALJ, and the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner."  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  Thus, even if the court were to disagree with the ALJ about the significance of certain facts, the court has no power to reverse that finding as long as there is substantial evidence in the record supporting it.

## III.   Discussion

Mr. Black alleges that the ALJ failed to properly consider his treating psychiatrist's Medical Assessment Form ("MAF") dated September 27, 2012, and

failed to properly develop the record to address any inconsistencies between the MAF and the plaintiff's medical records.

### A.    *Treating Physician's Diagnosis*

A treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted).  The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source.  *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).  Furthermore, "good cause" exists for an ALJ not to give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."  *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (*citing Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937

F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record).

The court must also be aware that opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). The court is interested in the doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's residual functional capacity. *See, e.g.,* 20 C.F.R. § 404.1546(c).

The opinion at issue is from the plaintiff's treating psychiatrist, Terry W. Bentley, M.D. On September 27, 2012, almost two full years after the expiration of the plaintiff's insurability coverage, Dr. Bentley completed an MAF on behalf of the plaintiff, in which he made certain judgments regarding the plaintiff's ability to work despite his impairments. Dr. Bentley opined that the plaintiff would have

moderate to severe difficulty following work rules, relating to co-workers, dealing with the public, using judgment, interacting with supervisors, dealing with work stress, functioning independently, and maintaining attention or concentration.  (Tr. at 376).  He asserted that the plaintiff would have severe difficulty understanding, remembering, and carrying out complex job instructions, and moderate difficulty with detailed, but not complex, or simple instructions.  (Tr. at 377).  He found that the plaintiff would have severe difficulty behaving in an emotionally stable manner or demonstrating reliability and moderate difficulty relating predictably in social situations.  (*Id.*)  On March 20, 2013, Dr. Bentley wrote a letter stating that he had been treating the plaintiff since March 27, 2006, and that he did not believe the plaintiff would be able to seek employment in the foreseeable future.  (Tr. at 378).

The plaintiff argues that the ALJ did not give proper weight to Dr. Bentley's MAF.  However, as the defendant notes, the MAF was created two years after the plaintiff's date last insured.  Accordingly, the defendant argues, the opinion is due lesser weight because it does not purport to offer information regarding the plaintiff's condition during the insurability period.  The Eleventh Circuit addressed a similar issue in the unpublished opinion, *Castle v. Colvin*, 557 Fed. Appx. 849 (11th Cir. 2014).  Although the unpublished opinion is not binding, this court finds it instructive.  The plaintiff in *Castle* filed for a period of disability and disability

insurance benefits on October 26, 2009.  557 Fed. Appx. at 850.  The medical evidence submitted "revealed that he had a knee arthroscopy in October of 1998. The doctor who performed the surgery ultimately released the plaintiff back to work without restrictions in April of 2000.  Following the release, the plaintiff did not visit any physician regarding knee trouble or knee pain between 2001 and 2009. *Id*.  Three months after the plaintiff's date last insured, he began seeing a chiropractor for knee pain and had another knee arthroplasty in February 2010.  *Id*. Two years after the plaintiff's date last insured the plaintiff's treating physician completed an RFC assessment, claiming that the plaintiff's pain frequently interfered with his ability to work.  *Castle*, 557 Fed. Appx. at 850-51.  The ALJ gave little weight to this assessment because the opinion was based on information obtained after the plaintiff's date last insured.  *Castle*, 557 Fed. Appx. at 851.  The Eleventh Circuit determined that,

> [t]he district court correctly noted that the ALJ should have afforded Dr. Ansari's 2011 opinion less weight.  First, Dr. Ansari completed his assessment two years after Mr. Castle's date last insured.  Second, other evidence in the record supports a contrary finding: the lack of medical treatment during the relevant time period; Mr. Castle's own testimony; his self-reported activities; and Dr. Layton's opinion following Mr. Castle's knee arthroscopy.

*Id.* at 854.

In the instant case, the ALJ explained his reasoning for giving the 2012 MAF

little weight:

> As for the opinion evidence, the undersigned considered the opinion of the claimant's treating physician, Terry Bently, M.D.   In a September 2012 statement, Dr. Bently stated the claimant has marked limitations in areas such as maintaining attention and concentration, dealing with work stress, and demonstrating reliability.  (Exhibit 13F.) However, this opinion was rendered approximately two years after the claimant's date last insured, and Dr. Bently failed to clarify whether this level of impairment was present during the relevant period.   In fact, as discussed above, treatment notes from the relevant period suggest the claimant had very few mental limitations.   Accordingly, Dr. Bently's opinion has been given little weight in making the above findings.

(Tr. at 25).

The plaintiff alleges a disability onset date of December 25, 2009, and his

date last insured was September 30, 2010.  Accordingly, Dr. Bentley's records from

that time period are necessary to determine whether his 2012 statement reflects the

medical records for the relevant time.  On December 31, 2009, Dr. Bentley listed

the plaintiff's diagnoses as bipolar disorder, general anxiety disorder, and alcohol

abuse.  (Tr. at 316).  The plaintiff reported his mood as "pretty good," and claimed

that his medication was working well for him.  (*Id.*)  The plaintiff mentioned plans

to start school in the spring.  (*Id.*)  On March 31, 2010, Dr. Bentley removed the

diagnosis of alcohol abuse. (Tr. at 317). The plaintiff reported a better mood and a feeling that he had things "back together." (*Id.*) On April 30, 2010, the plaintiff reported that his medication was working and that he was trying to find a job. (Tr. at 318). On June 4, 2010, the plaintiff reported that he was doing "fair" and that his mood was stable, but he had a great deal of worry. (Tr. at 319). He reported having trouble finding a job. (*Id.*) Dr. Bentley noted the plaintiff's affect as dysphoric and his mood as "ok." (*Id.*) On September 24, 2010, six days before the plaintiff's date last insured, he reported to Dr. Bentley that things were not going well and that he was dealing with a fair amount of anxiety. (Tr. at 320). He reported continued trouble finding work and financial difficulty. (*Id.*) He reported that he did not know if he could find time to go to work even if he had a job, because he was taking care of his ailing grandmother. (*Id.*) Dr. Bentley reported that the plaintiff's mood was not good. (*Id.*)

The ALJ's finding that the medical records from the relevant time period do not support Dr. Bentley's 2012 statement was supported by substantial evidence. Throughout the records spanning the relevant time, the plaintiff consistently reported that he was attempting to find a job. The records from late 2009 and early 2010 indicated that the plaintiff's symptoms responded well to treatment. The only records that reported a less than positive outlook from the plaintiff were in

June 2010 and September 2010.  Those issues appeared to be primarily related to trouble finding work and financial insecurity, as well as the burden of providing care for his ailing grandmother.  The plaintiff did not report that he felt his medication no longer worked.  The ALJ's decision to give little weight to Dr. Bentley's 2012 statement is supported by substantial evidence, because, as in *Castle*, the medical records from the relevant time period do not support the 2012 MAF statements and, in fact, support a contrary finding.

### B. Duty to Expand the Record

The plaintiff argues that the ALJ had a duty to re-contact Dr. Bentley to seek clarification regarding the 2012 statement's applicability to the relevant time period.  (Doc. 13, p. 10).  The ALJ's duty to develop the record is not triggered when the record contains sufficient evidence to make an informed decision.  *Ingram v. Commissioner of Social Security*, 496 F.3d 1253, 1269 (11th Cir. 2007).  The Eleventh Circuit has determined that a consultative examination must be ordered if one is needed to make an informed decision regarding the claimant's disability.  *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984), citing *Ford v. Secretary of Health and Human Servs.*, 659 F.2d 66, 69 (5th Cir. 1981) (Unit B).  An ALJ may request a consultative examination "to secure needed medical evidence, such as clinical findings, laboratory tests, a diagnosis, or prognosis" if the record indicates

"a change in [the claimant's] condition that is likely to affect [the claimant's] ability to work, but the current severity of [the claimant's] impairment is not established."  20 C.F.R. § 404.1519a(b)(4).

However, if the record is sufficiently developed for the ALJ to make a determination, it is not necessary for the ALJ to order an additional consultative examination or to expand the record.  *Good v. Astrue*, 240 Fed. Appx. 399, 403-404 (11th Cir. 2007).  In the instant case, the ALJ had available Dr. Bentley's records from the plaintiff's initial visit in March 2006 (tr. at 296-301) to his visit in May 5, 2013 (tr. at 380).  These records clearly portrayed the plaintiff's medical condition prior to September 30, 2010.  The record was sufficiently developed to allow the ALJ to make an RFC determination without seeking an additional consultative examination or further information from Dr. Bentley.

## IV.   Conclusion

Upon review of the administrative record, and considering all of Mr. Black's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law, and it will be AFFIRMED.   A separate order will be entered dismissing this matter with prejudice.

DATED this 30th day of September, 2015.

_____
T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE